IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Erie Division

ANTHONY HAPPEL,

Plaintiff

v.

WESLEY PAXTON, *et al.*,

Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:24-cv-259

RICHARD A. LANZILLO
Chief United States Magistrate Judge

MEMORANDUM OPINION ON
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

ECF NO. 25

Defendants' motion for summary judgment (ECF No. 25) is before the Court and fully briefed. For the reasons discussed below, the Defendants' motion will be GRANTED.[1]

I. Relevant Procedural History

Plaintiff Anthony Happel ("Happel") brings this civil rights action under 42 U.S.C. §1983 against the Oil City Police Department ("Department") and three current or former employees of the Department, Officer Wesley Paxton, Chief Rogans, and Lt. Cory Ruditis. *See* ECF No. 11 (Complaint). Happel's Complaint asserts claims based on Defendants' involvement in procuring and executing search warrants that resulted in the seizure of certain of his property and his arrest, prosecution, and guilty plea to charges of unlawful possession of a firearm and manufacture, delivery,

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge under 28 U.S.C. § 636(c).

1

or possession with intent to manufacture or deliver a controlled substance. The Complaint includes the following three counts:

- Count I: Fourth Amendment claim for "bad" search warrants procured without probable cause and with other defects. *Id.*, p. 13.

- Count II: Second Amendment claim premised on assertion that statute that prohibits a convicted felon from possessing a firearm is unconstitutional. *Id.* p. 15, ¶¶ 3-5.

- Count III: Fourteenth Amendment equal protection, "selective prosecution" claim based on officers' failure to charge another person who illegally possessed firearms. *Id.* at ¶ 5.

Defendants responded to the Complaint by filing both an Answer (ECF No. 24) and a motion for summary judgment (ECF No. 25). Defendants' motion was accompanied by a supporting brief (ECF No. 27) and a Concise Statement of Material Facts with supporting exhibits (ECF Nos. 28, 29). In addition to an attack on the substantive legal sufficiency of Happel's claims, Defendants' motion raised five essentially procedural arguments: (1) Happel lost standing to sue when he filed for Chapter 7 bankruptcy protection and his claims became property of the bankruptcy estate; (2) Happel is judicially estopped from claiming an interest in this case because he failed to disclose his claims during his bankruptcy proceedings; (3) Happel's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (4) Happel's claims are barred by res judicata and/or collateral estoppel; and (5) Plaintiff's claims are barred by the applicable statute of limitations. *See* ECF No. 31. Happel has filed a brief in opposition to the motion (ECF No. 67) and a responsive Concise Statement of Material Facts (ECF No. 66).

Defendants' motion is ripe for disposition.

II. Material Facts

The following facts are taken from the parties' respective Concise Statements of Material Fact filed under LCvR 56(B) as well as the exhibits thereto.[2]

In September 2022, Happel resided at two properties, one at 117 Washington Avenue, Oil City, Pennsylvania 16301, and the other at 99 Willow Street (upstairs), Oil City, Pennsylvania 16301. ECF No. 28, ¶1; ECF No. 66, ¶1. On September 12, 2022, Defendant Wesley Paxton, a Department patrolman, submitted an Application for Search Warrant and supporting Affidavit of Probable Cause requesting authorization to search the upstairs apartment at 117 Washington Avenue. ECF No. 29, pp 1-6. On September 14, 2022, Defendant Paxton submitted an Application for Search Warrant and supporting Affidavit of Probable Cause requesting authorization to search the premises at 99 Willow Street (upstairs).[3] ECF No. 29, pp 19-28. On September 14, 2022, Defendant Cory Ruditis, a Department lieutenant, submitted an Application for Search Warrant and supporting Affidavit of Probable Cause requesting authorization to search a specifically described 1986 Chevrolet motorhome owned by Audriana McCool at the 99 Willow Street Property. ECF No. 29, pp 29-39.

---

[2] Defendants' Concise Statement of Material Facts consists of 49 factual assertions. *See* ECF No. 28. Happel's responsive Concise Statement responded only to paragraphs 1 through 32 of Defendants' Concise Statement. *See* ECF No. 66, pp 1-4. By failing to respond to paragraphs 33-49 of the Defendants' Concise Statement, Happel is deemed to have admitted any properly supported facts stated therein. *See Boodoo v. AMP Home Care LLC*, 2025 WL 2840801, at *1 n.2 (W.D. Pa. Oct. 7, 2025) (quoting Local Rule). Happel also filed a "Declaration" with his responsive Concise Statement. ECF No. 66-1. The Court will consider the Declaration and note any properly supported facts that contradict paragraphs 33-49 of Defendants' Concise Statement.

[3] The warrant application listed the "owner, occupant or possessor" of the 99 Willow Street premises as Audriana McCool. ECF No. 29, p. 19. Ms. McCool was Happel's then girlfriend.

3

The Affidavit of Probable Cause submitted with each warrant request detailed the officer's investigation, including eyewitness reports and results of public records reviews, that supported probable cause to believe that evidence of Happel's illegal possession of multiple firearms and other criminal offenses were located on or within the subject properties. *See* ECF No. 29, pp. 2-3, 20-23, 30-33. In accordance with Pennsylvania law and procedure, a magisterial district judge reviewed each Application and its supporting Affidavit of Probable Cause and, following review of each, approved its issuance and execution. Each warrant Application and Affidavit was sworn and signed by the attesting officer. Each Warrant was duly signed and sealed by the approving magisterial district judge. *See* ECF No. 29, pp. 1, 19, 29. The Warrants were executed on September 14, 2022. ECF No. 28, ¶3; ECF No. 66, ¶3. During the searches, law enforcement officers recovered multiple firearms and drug paraphernalia. ECF No. 28, ¶4; ECF No. 66, ¶4.

Following the searches, Happel was charged in the Court of Common Pleas of Venango County with offenses that included prohibited possession of a firearm in violation of 18 Pa. Cons. Stat. § 6105(a)(1), and manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance in violation of 35 Pa. Stat. § 780-113(a)(30). ECF No. 28, ¶5; ECF No. 66, ¶5. On June 12, 2023, Happel entered guilty pleas to these two charges. ECF No. 28, ¶6; ECF No. 66, ¶6. On September 18, 2023, he filed an appeal to the Pennsylvania Superior Court, which was dismissed on July 18, 2024. ECF No. 28, ¶7; ECF No. 66, ¶7.

4

On January 4, 2023, prior to his guilty plea, Happel filed a civil complaint in the Court of Common Pleas of Venango County at docket number 2023-00019 alleging violations of his state and federal constitutional rights in connection with the application for and execution of the warrants. His state court complaint named the same four defendants named in this action and, like this action, challenged the validity and execution of the search warrants. After Defendants challenged the legal sufficiency of Happel's state court complaint, he filed successive amended complaints, first on May 8, 2023, and again on May 30, 2023, asserting claims labeled as trespass, negligence, theft, and fraudulent concealment, all arising from the same allegations of lack of probable cause for the search warrants, unlawful seizure of personal property, unlawful search and seizure of an RV owned by Happel's girlfriend, and failure to secure Happel's property following execution of the warrants.

On July 6, 2023, the state court sustained Defendants' preliminary objections, finding both that the search warrants were lawfully obtained and executed and that Defendants were immune under the Pennsylvania Political Subdivision Tort Claims Act. Although the state court granted Happel leave to file a further amended complaint, and Happel sought and obtained two extensions to do so, he opted not to file one. Defendants thereafter filed a praecipe to enter judgment of *non pros*[4], and

---

[4] Under Pennsylvania procedural law "*non pros*," or "*non prosequitur*," refers to a judgment for the defendant entered after a showing that the plaintiff has failed to prosecute the action with due diligence, that there is no compelling reason for delay, and that delay has prejudiced defendant, under Pennsylvania law. *See, e.g., Abdulhay v. Bethlehem Med. Arts, L.P.*, 2005 WL 2416012, at *9 (E.D. Pa. Sept. 28, 2005) (citation omitted).

the state court entered judgment on November 10, 2023.  Happel did not appeal the entry of that judgment.

Thereafter, Happel commenced the present action in this Court alleging violations of his rights under the Fourth Amendment, the Second Amendment, and the Equal Protection Clause of the Fourteenth Amendment arising from the September 14, 2022, execution of the search warrants.  He contends that the warrants were based on false or misleading information, were not properly signed and sealed, and resulted in unconstitutional searches and seizures.  Happel further alleges that Defendants improperly deemed him a person prohibited from possessing a firearm and that they engaged in selective enforcement by failing to charge others with gun possession and thereby violated his equal protection rights.

On September 8, 2024, six days before Happel commenced this action, he filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Pennsylvania.  Happel consulted with bankruptcy counsel regarding the filing of the petition for relief before he was sentenced in his state court criminal case.  He then granted his father, Mark Happel, power of attorney to act on his behalf in connection with the subsequent bankruptcy proceedings.  As Happel's power of attorney, Mark Happel signed the bankruptcy petition and schedules under oath and subject to the penalties of perjury.

On October 9, 2024, the Chapter 7 trustee conducted a meeting of creditors pursuant to 11 U.S.C. § 341.  Mark Happel testified on his son's behalf. He affirmed that the bankruptcy schedules were true and correct and that they listed all Happel's

assets and interests. In response to questioning by the trustee, Mark Happel testified that his son was not involved in any lawsuits and that no one owed Happel money. The trustee advised Mark Happel, as Happel's attorney-in-fact, that any later-discovered claims or potential recoveries were required to be disclosed.

On November 6, 2024, the trustee filed a Report of No Distribution, stating that no non-exempt property was available for distribution to creditors. On December 11, 2024, the Bankruptcy Court entered an order discharging Happel from his debts. Happel did not amend his bankruptcy schedules at that time to disclose this lawsuit. Happel's bankruptcy case closed on January 5, 2025.

Then, on May 9, 2025, and during the pendency of these proceedings, Happel's bankruptcy attorney filed a motion to reopen his bankruptcy case. Counsel acknowledged that she became "aware of three related civil rights claims that have been filed in the United States District Court for the Western District of Pennsylvania that were claims owned by [Happel] when his bankruptcy case was filed." *See* Case No. 24-10523, ECF No. 23, ¶ 3 (Pa. W.D. Bankr. 5/5/25). The Bankruptcy Court granted the motion and reopened Happel's case, appointing Justin Schantz as trustee. On May 27, 2025, the trustee filed a "Notice of Intent to Abandon Interest in litigation in district court case 24-cv-00259-RAL" with the Bankruptcy Court. On June 16, 2025, the Bankruptcy Court deemed Happel's claims against Wesley Paxton, Oil City Police Department, Chief Rogan, and Lt. Cory Ruditis "as encompassed" in this litigation to be abandoned.

III.    Standard of Review

Federal Rule of Civil Procedure 56(a) requires the district court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). A dispute of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

In deciding a motion for summary judgment, the Court views the record and draws all reasonable inferences therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings

with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts remain in genuine dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Additionally, on a motion for summary judgment, "a pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion ..." *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted). Thus, a litigant's pro se status does not relieve him of his "obligation under Rule 56(c) to produce evidence that raises a genuine issue of material fact." *Id.* (quoting *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)).

IV.    Discussion and Analysis

   A. Defendants are entitled to judgment as a matter of law on all claims against the Oil City Police Department.

The Complaint names the Department as a Defendant, presumably based on a theory of municipal or supervisory liability. *See* ECF No. 11, p. 12 (alleging the Department "did act under color of state law in that they are a local police department and employ all officers involved in this case under their jurisdiction and are therefore liable for the actions of all of their employees"). This claim fails for at least two reasons. First, municipal police departments are not subject to suit because they "are administrative arms of local municipalities, not separate entities." *Padilla v. Twp. of Cherry Hill*, 110 Fed. Appx. 272, 278 (3d Cir. 2004). *See also Deemer v. City of Oil City*, 2021 WL 4391275, at *5 (W.D. Pa. Sept. 24, 2021); *Chandler v. Sharon PD*, 2021 WL 753043, at *1 (W.D. Pa. Feb. 26, 2021). Second, assuming Happel intended to

assert a claim against the municipality of Oil City, the Complaint fails to do so because it neither names Oil City as a defendant nor alleges facts to support that a policymaker adopted or maintained a policy, practice, or custom that was the "moving force" behind any alleged violation of Happel's constitutional rights. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-390 (1989); *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Accordingly, judgment will be entered in favor of the Department.

B. Happel's initial failure to identify his Section 1983 claims in his bankruptcy petition does not deprive him of standing to assert them in this Court or support judicial estoppel as a matter of law.

Defendants contend that Happel lacked standing to bring this action at the time it was filed because the claims belonged to the Chapter 7 bankruptcy estate and that this defect cannot be cured by the trustee's subsequent abandonment of the claims. Defendants further argue that Happel should be judicially estopped from pursuing this action because he disclosed the claims in his bankruptcy case only after Defendants filed their motion for summary judgment. The Court is not persuaded by either contention.

1.    Standing and Real Party in Interest

Upon the filing of a Chapter 7 bankruptcy petition, all legal and equitable interests of the debtor, including prepetition causes of action, become property of the bankruptcy estate. 11 U.S.C. § 541(a)(1); *see also In re O'Dowd*, 233 F.3d 197, 202 (3d Cir. 2000). As a general matter, the Chapter 7 trustee is the real party in interest with exclusive authority to prosecute such claims on behalf of the estate. *See, e.g., In*

10

*re Kane*, 628 F.3d 631 (3d Cir. 2010) (holding the trustee is the real party in interest for unscheduled claims); *Bartel v. Foster Wheeler Co.*, 2015 WL 6750379, at *6 (E.D. Pa. Nov. 4, 2015).

Defendants correctly observe that standing is ordinarily assessed at the time the complaint is filed. *See Rd.-Con, Inc. v. City of Philadelphia*, 120 F.4th 346, 354 (3d Cir. 2024) ("[S]tanding is assessed at the time the action commences, that is, at the time the plaintiff brought the lawsuit.") (quoting *Carney v. Adams*, 592 U.S. 53, 60 (2020) (other citations omitted)). However, Defendants misconstrue the nature of the defect at issue here. A debtor's lack of authority to prosecute a prepetition claim belonging to the bankruptcy estate is not a jurisdictional defect depriving the Court of Article III power to adjudicate the case; rather, it is a real-party-in-interest problem governed by Federal Rule of Civil Procedure 17(a). *See, e.g., Schafer v. Decision One Mortg. Corp.*, 2009 WL 1886071, at *5 (E.D. Pa. June 30, 2009). Rule 17(a)(3) expressly prohibits dismissal on real-party-in-interest grounds until a reasonable time has been afforded for the real party in interest to ratify, join, or be substituted into the action. Although the bankruptcy trustee is the "representative of the estate" and generally possesses the exclusive capacity to sue on behalf of that estate. *see* 11 U.S.C. § 323(a), the trustee's status as the real party in interest is not immutable. Under 11 U.S.C. § 554, a trustee may abandon property that is "burdensome to the estate or that is of inconsequential value and benefit to the estate." In this case, the trustee filed a notice of abandonment regarding Happel's civil rights claims, which the Bankruptcy Court approved. *See In re: Happel*, Case

11

No. 24-10523-JCM, ECF No. 48 (W.D. Pa. Bankr. June 16, 2025).[5] The legal effect of such abandonment is clear: "property abandoned by the trustee ... reverts to the debtor and stands as if no bankruptcy petition was ever filed." *In re Kane*, 628 F.3d at 637 (internal citations omitted). Once a claim is abandoned, the debtor's standing is restored *nunc pro tunc*. *See, e.g., In re Guterl Special Steel Corp.*, 316 B.R. 843, 861 (Bankr. W.D. Pa. 2004) (holding that abandoned property ceases to be property of the estate and "[i]t reverts *nunc pro tunc* to the debtor or whoever had the possessory right to the property when the bankruptcy petition was filed, and stands as though no bankruptcy petition was ever filed") (citing *Dewsnup v. Timm (In re Dewsnup)*, 908 F.2d 588, 590 (10th Cir. 1990), *aff'd* 502 U.S. 410 (1992)).

Moreover, even if a real-party-in-interest defect existed at the time Defendants filed their motion for summary judgment, Rule 17(a)(3) provided a mandatory "safe harbor" period to correct the defect. *See Gremillion v. State Farm Fire & Cas. Co.*, 2023 WL 5978215, at *1 (W.D. La. Aug. 28, 2023), *report and recommendation adopted*, 2023 WL 5969639 (W.D. La. Sept. 13, 2023). The Rule stipulates that a court "may not dismiss an action ... until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). Courts regularly apply Rule 17(a) to prevent forfeiture when an "understandable mistake" has been made. *See, e.g., Ruzbacki v. Newhaven Ct. at Clearview*, 2026 WL 380968, at *4 (W.D. Pa. Feb. 11, 2026) (citing

---

[5] This Court may take judicial notice of the Bankruptcy Court's docket. *See, e.g., Pinkney v. Meadville, Pennsylvania*, 2025 WL 2694099, at *1, n.2 (3d Cir. Sept. 22, 2025) (citing Federal Rule of Evidence 201(b)(2), (c)(1) (other citations omitted)).

12

*Gardner v. State Farm Fire and Cas. Co.*, 544 F.3d, 553, 563 (3d Cir. 2008)); *see also* 6 C. Wright and A. Miller, Federal Practice and Procedure § 1555 (1971).

When the trustee divested the estate of Happel's claims through abandonment, Happel regained real-party-in-interest status and authority to prosecute the claims in his name. Other than some litigation delay, the Defendants have suffered no prejudice due to the reversion of real-party-in-interest status to Happel. Because the trustee has abandoned the claims, no risk of double recovery or inconsistent adjudications exists, and the Defendants occupy the same position they would have occupied had the bankruptcy never occurred. Accordingly, the Court will deny Defendants' motion to the extent it asserts Happel lacks standing to pursue his claims.

### 2. Judicial Estoppel

Defendants also contend that Happel should be judicially estopped from proceeding on his claims because he "played fast and loose" when he disclosed his claims and reopened his bankruptcy case only after they raised his nondisclosure and lack of standing in their motion. ECF No. 31, p. 9. "The basic principle of judicial estoppel … is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996). Thus, judicial estoppel is intended to protect the integrity of the judicial process, not to punish inadvertence or mistake. *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001). "Judicial estoppel is only

13

appropriate when the inconsistent positions are 'tantamount to a knowing misrepresentation to or even fraud on the court.'" *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 324 (3d Cir. 2003) (quoting *Total Petroleum, Inc. v. Davis*, 822 F.2d 734–38 (8th Cir.1987)).  When evaluating whether the facts warrant invocation of estoppel, courts must consider: (1) whether the party's later position is irreconcilably inconsistent with its earlier position; (2) whether the party changed positions in bad faith; and (3) whether judicial estoppel is tailored to address the harm and no lesser sanction would adequately remedy the injury to the judicial process. *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777–78 (3d Cir. 2001).

The first consideration supports invocation of judicial estoppel.  In his bankruptcy schedules, Happel represented to the Bankruptcy Court and his creditors that he had no undisclosed claims or causes of action and that no one owed him a debt.  Yet six days later, he commenced this action asserting his claims against Defendants.  It is of no moment that Happel's father and attorney-in-fact omitted listing the claims against Defendants from Happel's bankruptcy schedules because Happel's father was acting on Happel's behalf. *See J.H. Grp., LLC v. Royal Rolling Chairs, LLC*, 523 Fed. Appx. 922, 924 (3d Cir. 2013) (holding that "the fact that the [plaintiffs] gave documents to their attorney did not relieve them of their obligation for candor to the bankruptcy court").  The second consideration is more nuanced.  Defendants urge the Court to infer bad faith as a matter of law based on the timing of Happel's disclosure to the bankruptcy court, emphasizing that he disclosed the

14

claim only after Defendants raised the omission in their dispositive motion. This sequence circumstantially supports a finding that despite Happel's awareness of his claims when he authorized the filing of his bankruptcy petition, he belatedly disclosed them only after Defendants called out their omission from his bankruptcy schedules. While suspicious, however, this sequence does not conclusively establish bad faith. *See Ryan Operations*, 81 F.3d at 362–65 (declining to apply judicial estoppel absent evidence of intent to mislead the bankruptcy court); *In re Kane*, 628 F.3d at 638–40 (requiring a showing of intentional self-contradiction or manipulation of the courts). The Court must examine the totality of the circumstances, including the debtor's explanation for the omission, whether the bankruptcy court and creditors were misled, and whether corrective action was taken once the omission was identified. *Id.*, 628 F.3d at 639. Happel asserts that the omission of his claims from his bankruptcy schedules was an oversight by his father and that he promptly corrected the oversight in the bankruptcy court after Defendants raised it. *See* ECF No. 67, p. 6. And the Trustee's abandonment of the claims tends to belie a finding that Happel's creditors sustained any prejudice because of the omission. *See In re Kane*, 628 F.3d at 640.

For these reasons, the record does not demonstrate Defendants' entitlement to judgment as a matter of law based on judicial estoppel.[6]

---

[6] The Court's denial of summary judgment on this issue is not necessarily the last word on Defendants' judicial estoppel defense. At this stage, the Court has only determined that Defendants are not entitled to judgment as a matter of law on the current record and that credibility issues remain. The Court would normally reserve its final determination of this defense pending an evidentiary hearing. However, given the Court's disposition of Happel's claims on the merits, discussed *infra*, no hearing is necessary.

C. The doctrines of res judicata and collateral estoppel do not bar Happel's claims.

Defendants next contend that Happel's civil rights claims are barred by the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion). *See* ECF No. 31, p. 16. They submit that Happel's previous litigation in the Venango County Court of Common Pleas, which culminated in a judgment of *non pros* for his failure to file an amended complaint, served as a final judgment on the merits of his claims that forecloses the present action.[7]  The core question then is whether a Pennsylvania state court judgment of *non pros* entered for failure to prosecute an action carries preclusive effect as a final judgment on the merits in a subsequent federal action.  It does not.

A party seeking to invoke res judicata must establish three elements: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Marmon Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 726 F.3d 387, 394 (3d Cir. 2013). Collateral estoppel is similar but not identical in application.  "For a party to be estopped from relitigating an issue, the following elements must be present: (1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment." *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997)

---

[7] Although claim and issue preclusion are questions of law, the Defendants bear the burden of establishing the elements through competent record evidence of the prior proceedings. *Greenway Ctr., Inc. v. Essex Ins. Co.*, 475 F.3d 139, 147 (3d Cir. 2007).

(citing *In re Ross*, 602 F.2d 604, 608 (3d Cir.1979) and Restatement (Second) Judgments § 27 (1982)). In assessing whether there has been a prior "final judgment on the merits," this Court looks to the law of the forum. In Pennsylvania, a judgment of *non pros* is essentially a tool of docket management, employed when a party fails to move a case forward with due diligence. *See Kreidie v. Meuser,* 2013 WL 12099666, at *1 (E.D. Pa. Nov. 14, 2013), *aff'd sub nom. Kreidie v. Sec'y, Pennsylvania Dep't of Revenue,* 574 Fed. Appx. 114 (3d Cir. 2014) (describing *"non pros"* as a "state court procedural tool"). The Pennsylvania Supreme Court and other state appellate courts have consistently maintained that a judgment of *non pros* is not a judgment on the merits. *See, e.g., Hatchigian v. Koch*, 553 A.2d 1018, 1020 (Pa. 1989) ("Since a *non pros* is not a judgment on the merits, it cannot have res judicata effect."). Rather, a judgment of *non pros* merely terminates the litigation due to a failure prosecute the action without determining the rights of the parties. *See Karno-Smith Co. v. Sch. Dist. of City of Scranton, Lackawanna Cnty.*, 44 F. Supp. 860, 863 (M.D. Pa. 1942) (citing *Bucci v. Detroit Fire & Marine Ins. Co.*, 167 A. 425, 427 (Pa. Super. Ct. 1933)).

The Pennsylvania Rules of Civil Procedure further codify this understanding. Specifically, Pa. R.C.P. 231(a) provides that after a judgment of *non pros*, "the plaintiff may commence a second action upon the same cause of action upon payment of the costs of the former action." Thus, the rule expressly disavows the finality of a judgment of *non pros*. Furthermore, under Pennsylvania procedural law, a dismissal without prejudice and with leave to amend is considered a procedural dismissal rather than a substantive disposition on the underlying claims. *See Moyer v. Shaffer,*

17

305 A.3d 1064, 1068 (Pa. Super. Ct. 2023) (holding that where PFA petition was not adjudicated on the merits and dismissed "without prejudice" for party's failure to appear at the hearing, doctrines of res judicata and collateral estoppel do not apply).[8]

Admittedly, federal law differs. In the federal system, Fed. R. Civ. P. 41(b) dictates that an involuntary dismissal for failure to prosecute "operates as an adjudication on the merits" unless the order states otherwise. However, where the Court is asked to apply res judicata to a state court's prior judgment, we are bound by the Full Faith and Credit Act, 28 U.S.C. § 1738, to give the state court judgment the same preclusive effect it would enjoy in the courts of that state. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001). Because a Pennsylvania court would not treat a judgment of *non pros* for failure to file an amended complaint as a bar to a subsequent suit (provided the statute of limitations has not expired), this Court cannot afford that judgment preclusive effect. And as Defendants have not pointed to evidence in the record that the state court intended the *non pros* to be anything other than a standard procedural dismissal, it cannot be considered a final judgment on the merits. Accordingly, the doctrine of res judicata does not preclude Happel's claims.

Collateral estoppel or issue preclusion likewise does not preclude Happel's claims. That doctrine requires that "the issue must have been determined by a valid and *final judgment*...." *In re Docteroff*, 133 F.3d at 214 (emphasis added) (citation

---

[8] Although the Court of Common Pleas granted Defendants' demurrer (Pennsylvania's equivalent to a Rule 12(b)(6) motion to dismiss), it did so without prejudice and with leave to file an amended complaint.

omitted).  As discussed, Pennsylvania law, which the Court is required to follow in this context, does not regard the judgment of *non pros* entered by the Court of Common Pleas of Venango County as a final judgment.  Therefore, neither res judicata nor collateral estoppel bars Happel's lawsuit or any claim or issue presented.[9]

D. The statute of limitations does not bar Happel's claims.

Defendants also request summary judgment on the ground that Happel's claims are time-barred.  Actions brought pursuant to 42 U.S.C. § 1983 are subject to the forum state's statute of limitations for personal injury actions.  *See Wilson v. Garcia*, 471 U.S. 261, 272-76 (1985) (holding that all § 1983 actions should be classified as claims for personal injury for the purpose of determining the limitations period under the applicable state law). Pennsylvania law provides a two-year statute of limitations for personal injury actions.  *See* 42 Pa. Cons. Stat. Ann. § 5524; *Kost v. Kozakiewicz*, 1 F.3d 176, 189–90 (3d Cir. 1993).  Because the underlying events upon which Happel bases his claims occurred no later than September 14, 2022, Happel was required to commence this action by September 14, 2024.

As an initial matter, Defendants note that Happel waited until September 14, 2024, the final day of the limitations period to attempt his filing.  This fact is legally immaterial.  Under Federal Rule of Civil Procedure 6(a), the day of the triggering event is excluded from the calculation, while the "last day of the period" is expressly

---

[9] Res judicata or collateral estoppel effect may have attached had Defendants moved the state court to enter final judgment on its prior order granting their demurrer.  Instead, they opted to obtain a judgment of *non pros* for failure to prosecute which, under Pennsylvania law, does not have preclusive effect.

19

included. *Frey v. Woodard*, 748 F.2d 173, 177 (3d Cir. 1984). Accordingly, a complaint filed on the the two-year anniversary of the accrual of the cause of action is timely as a matter of law.

In arguing that Happel did not commence this action by September 14, 2024, Defendants rely on the formal docketing date of Happel's Complaint on November 25, 2024, rather than the date he dated the pleading and delivered it to prison officials for mailing. This reliance is also misplaced. It is well-settled that a pro se prisoner is deemed to have filed a pleading or other paper when he delivers it to prison authorities for forwarding to the district court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Werkheiser v. Shoemaker*, 2025 WL 1888223, at *1 (M.D. Pa. July 8, 2025). The Third Circuit has explicitly extended this "prisoner mailbox rule" to § 1983 complaints. *See Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 600 n.2 (3d Cir. 2015). Under that rule, a complaint is deemed filed when an inmate delivers it to the prison officials for mailing, not on the date the complaint was received and/or docketed with the court. *See, e.g., Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998). Happel signed his Complaint on September 10, 2024. Absent evidence that he delivered the pleading to prison officials on a later date, the Court will use that date to consider the timeliness of his filing. *See, e.g., Barosh v. Houser*, 2025 WL 3491562, at *1 (E.D. Pa. Aug. 28, 2025), *report and recommendation adopted*, 2025 WL 3281840 (E.D. Pa. Nov. 25, 2025). Because this date falls within the two-year statute of limitations, Happel timely commenced his action in this Court, notwithstanding any administrative processing or mailing delays.

20

Defendants also contend that Happel's failure to include the required inmate account authorization form with his motion to proceed in forma pauperis ("IFP"), which precipitated the Court's administrative closure of the case on October 4, 2024, renders his filing untimely. The Court disagrees. Third Circuit precedent dictates that while a complaint is not technically "filed" until the filing fee is paid or an IFP motion is granted, the "lodging" of a complaint alongside an IFP application tolls the statute of limitations. *McDowell v. Del. State Police*, 88 F.3d 188, 191 (3d Cir. 1996) (citations omitted). If the IFP motion is ultimately granted, the complaint is deemed filed as of the date it was originally received by the Clerk. *Id. See also Urrutia v. Harrisburg Cnty. Police Dep't*, 91 F.3d 451, 459 (3d Cir. 1996). This "relation-back" doctrine applies even where the initial IFP application is technically deficient. Although Happel's initial filing lacked the necessary authorization form, his submission of the Complaint on September 10, 2024, effectively stopped the clock. And his subsequent compliance with the Court's order to cure the defect preserved the tolling effect of his initial filing of the Complaint and IFP motion.

Finally, Defendants' reliance on *Lyons v. Emerick*, 187 Fed. Appx. 219 (3d Cir. 2006), is unpersuasive. *See* ECF No. 31, p. 20. Unlike the plaintiff in *Lyons*, who failed to transmit his complaint until after the statute of limitations had expired, there is no evidence to support that Happel failed to deliver his pleading to prison officials for mailing on the date he signed the pleading, which was within the statute of limitations. The Court will therefore deny Defendants' motion for summary judgment to the extent it is based on expiration of the statute of limitations.

E. *Heck v. Humphrey* bars Happel's Second Amendment claim but not his Fourth or Fourteenth Amendment claims.[10]

As noted, Happel's Complaint asserts three claims:

- Count I: Fourth Amendment claim for "bad" search warrants procured without probable cause and with other defects. *Id.*, p. 13.

- Count II: Second Amendment claim premised on assertion that statute that prohibits a convicted felon from possessing a firearm is unconstitutional. *Id.* p. 15, ¶¶ 3-5.

- Count III: Equal protection "selective prosecution" claim Happel based on failure to charge another person who illegally possessed firearms. *Id.* at ¶ 5.

Defendants argue that each claim is barred by the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a plaintiff has no cognizable claim under 42 U.S.C. § 1983 where the success of that claim would imply the invalidity of the plaintiff's prior conviction or sentence unless the conviction or sentence was reversed on direct appeal, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.*, 512 U.S. at 486–87. *See also Edwards*

---

[10] Defendants first raised Happel's guilty plea and the *Heck* bar in their reply brief. *See* ECF No. 72, p. 12. Normally the Court would not address issues not raised in a moving party's principal brief. *See, e.g., Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 146 (3d Cir. 2017) ("Nor will we reach arguments raised for the first time in a reply brief or at oral argument") (citing *In re Surrick*, 338 F.3d 224, 237 (3d Cir. 2003)). In this case, however, the Court declines to find a waiver of issues given the unusual procedural history of this case. When Defendants filed their motion for summary judgment, they principally relied on the jurisdictional defect that Happel lacked standing to assert his claims due to his bankruptcy. *See* ECF Nos. 25, 31. It was only after Happel later procured the reopening of his bankruptcy case and the trustee's abandonment of his claims that he acquired real-party-in-interest status. While Happel's procedural machinations were permissible, they materially changed the legal posture and circumstances of this case. Given Happel's change in position, it would be inequitable to preclude Defendants from advancing legal and factual defenses based on their having failed to raise certain of them in their moving brief. Any potential prejudice to Happel was removed when the Court granted him leave to file a *sur* reply to respond to issues raised in Defendants' reply brief. And Happel has not raised waiver as grounds for denial of Defendants' motion. *See* ECF No. 74; ECF No. 76 (*Sur* Reply).

*v. Balisok*, 520 U.S. 641, 645–47 (1997). The purpose of the *Heck* bar "is to avoid parallel litigation of probable cause and guilt," and to prevent "the claimant from succeeding in a tort action after having been convicted in the underlying criminal prosecution, which would run counter to the judicial policy against creating two conflicting resolutions arising from the same transaction." *Gilles v. Davis*, 427 F.3d 197, 209 (3d Cir. 2005).

     1. *Heck* does not bar Happel's Fourth Amendment claim.

The *Heck* Court emphasized that the bar only applies where a claim under § 1983 necessarily implies that the plaintiff's conviction was unlawful. In a footnote, the Court specifically identified "a suit for damages attributable to an allegedly unreasonable search" as an action that "may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction." *Heck*, 512 U.S. at 487 n.7. The Court explained:

> For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, *see Murray v. United States*, 487 U.S. 533, 539, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472 (1988), and especially harmless error, *see Arizona v. Fulminante*, 499 U.S. 279, 307–308, 111 S.Ct. 1246, 1263–1264, 113 L.Ed.2d 302 (1991), such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.

*Id.* The Court went on to caution that even in such a case, the plaintiff can recover compensatory damages only if he proves that the unlawful search caused him an "actual, compensable injury," which cannot be the conviction itself:

> In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, *see Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 308, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986), which, we hold today, does not encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).

*Id.*

Following the Supreme Court's analysis, federal courts have consistently held that Fourth Amendment claims based on a search allegedly performed without probable cause are not barred by *Heck*. *See, e.g.*, *Harris v. Trent*, 2026 WL 575066, at *7 (W.D. Pa. Mar. 2, 2026) (holding that Fourth Amendment claim premised on unreasonable search of home was not *Heck* barred). The same conclusion applies to Happel's Fourth Amendment claim in this case.

       2. *Heck* does not bar Happel's selective enforcement claim.

Although Happel labels his equal protection claim as a selective prosecution claim, it is more accurately evaluated as a selective enforcement claim. In substance, the elements of the two theories of liability are nearly identical. *See Matthews v. Runco's Tavern & Grill, Inc.*, 2013 WL 6055219, at *4-5 (M.D. Pa. Nov. 15, 2013). But the two differ as far as the identity of the defendants subject to each. Selective enforcement claims are generally asserted against law enforcement personnel, while selective prosecution claims are brought against prosecutors. *Id.* at *5. If a claim is

24

directed solely at police misconduct, "the claim should be for selective enforcement." *Davis v. Malitzki*, 451 Fed. Appx. 228, 234 n.11 (3d Cir. 2011). Because Happel asserts his claim solely against three current or former law enforcement officials, the Court will analyze it as a selective enforcement claim.

To establish a selective-enforcement claim, a plaintiff must demonstrate (1) that he was treated differently from other similarly situated individuals, and (2) "that this selective treatment was based on an 'unjustifiable standard, such as race, or religion, or some other arbitrary factor, ... or to prevent the exercise of a fundamental right.'" *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting *Holder v. City of Allentown*, 987 F.2d 188, 197 (3d Cir. 1993)). As these elements demonstrate, the success of a selective-enforcement claim does not "hinge on the plaintiff's innocence of the criminal charge." *Muhammad ex rel. J.S. v. Abington Twp. Police Dep't*, 37 F. Supp. 3d 746, 756 (E.D. Pa. 2014). In other words, if Happel is successful on the claim, it will not imply that he did not commit the offenses with which he was charged and to which he pled guilty. Given the absence of any such implication, *Heck* does not bar the claim. *Id.*

> 3. *Heck* bars Happel's claim that Pennsylvania's "felon in possession of a firearm" statute is unconstitutional.

Happel pled guilty to the criminal offense codified at 18 Pa. Cons. Stat. § 6105(a)(1). This statute prohibits individuals convicted of specific violent crimes, certain drug offenses, or those meeting criteria in subsection (c) (such as active PFAs, dishonorable discharge, or undocumented status) from possessing, using, controlling, selling, or manufacturing firearms in Pennsylvania. In this action, Happel asserts a

25

claim that the statute violates his rights under the Second Amendment to the Constitution. This claim directly implies the invalidity of Happel's guilty plea to a violation of § 6105(a)(1). And Happel's guilty plea has not been reversed or set aside or called into question by the issuance of a writ of habeas corpus. *Heck* therefore bars this claim.

As the Supreme Court in *Heck* noted, the most obvious example of a claim barred by its holding is one in which the plaintiff actually "seek[s] damages directly attributable to conviction or confinement." 512 U.S. at 487 n.6. "But even when the plaintiff does not seek such damages, his suit may be barred if, for example, he must negate 'an element of the offense of which he has been convicted' in order to prevail … *or if he contends that the statute under which he was convicted is unconstitutional.*" *Smith v. Jones,* 2026 WL 759645, at *6 (S.D. Ala. Feb. 23, 2026) (emphasis supplied), *report and recommendation adopted,* 2026 WL 758454 (S.D. Ala. Mar. 17, 2026). *See also Morgan v. Schott,* 914 F.3d 1115, 1120 (7th Cir. 2019) (claim based on unconstitutionality of statute under which plaintiff was convicted barred by *Heck* unless and until conviction is reversed or set aside). Happel's Second Amendment challenge to the Pennsylvania statute establishing the offense to which he pled guilty directly implies the invalidity of his conviction. As to this claim, Defendants are entitled to judgment as a matter of law based on the *Heck* bar.[11]

---

[11] Even if the *Heck* bar did not apply to this claim, it is facially without merit. First, it is unclear how Happel could advance such a claim against the law enforcement Defendants in this case. Second, the statute at issue withstands scrutiny under the standards articulated by the Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen,* 597 U.S. 1, 24 (2022) (holding that a firearms regulation is constitutional if it is consistent with the historical tradition of firearm regulation in the United States) and *United States v. Rahimi,* 602 U.S. 680, 692 (2024) (clarifying that a firearms regulation is constitutional if it "fits within a broader tradition" of firearm restrictions directed at individuals who

Having determined that the procedural defenses raised by the Defendants do not support the entry of summary judgment, the Court will turn to the merits of Happel's claims.

F. Happel's Fourth Amendment claims fail as a matter of law.

The Fourth Amendment guarantees "the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also Graham v. Connor*, 490 U.S. 386, 394 (1989) (observing that "the Fourth Amendment ... guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person"); *Anglemeyer v. Ammons*, 92 F.4th 184, 188 (3d Cir. 2024) (same). Happel's Fourth Amendment claim has three components. He challenges the form of the warrants, the sufficiency of the officers' showing of probable cause to search the subject properties, and the reasonableness of the way they conducted the searches.

### 1. Procedural Compliance and Probable Cause to Search

The Court can quickly dispose of Happel's allegations that the warrants were "bad" because they were not properly signed and sealed. *See* ECF No. 66, ¶2. Having carefully reviewed each warrant and its associated submissions, the Court finds no support for Happel's position that any warrant or submission was defective on its face or otherwise failed to comply with Pennsylvania procedural requirements. Each

---

pose a credible threat to the physical safety of others). In *Commonwealth v. Randolph*, the Pennsylvania Superior Court held that 18 Pa. Cons. Stat. § 6105(a)(1) is constitutional under *Bruen* and *Rahimi*. 343 A.3d 1248 (Pa. Super. 2025). The Court agrees with the well-reasoned analysis and holding of that decision.

Application and Affidavit of Probable Cause was duly signed and attested to under oath by the requesting officer. Each identified with adequate specificity the property to be searched and the items subject to seizure. Each Affidavit of Probable Cause was factually detailed and set forth the facts observed by the investigating officers, the facts related by witnesses who were interviewed by the officers, and information obtained through review of public records. Each warrant was approved by a Pennsylvania magisterial district judge and issued under that judicial officer's signature and seal. Having determined the warrants and their supporting documents complied with all procedural requirements, the Court now turns to whether the warrant documents supported probable cause for the searches.

Probable cause to search exists where, considering the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Even where a search warrant is found to have lacked supporting probable cause, the officer's search is valid so long as his reliance on the warrant was objectively reasonable. *See United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993).

In this case, a neutral Pennsylvania magisterial district judge found that probable cause supported each warrant at issue. "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565

U.S. 535, 546 (2012). But approval of a warrant application by a neutral judicial officer is not conclusive evidence of probable cause. A plaintiff may still establish a Fourth Amendment violation by showing that "(1) the police officer knowingly and deliberately, or with a reckless disregard for the truth, made statements or omissions that created a falsehood in applying for a warrant; and (2) that such statements or omissions are material or necessary to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (internal quotation marks and citation omitted). *See also, United States v. Yusuf*, 461 F.3d 374, 383-84 (3d Cir. 2006) (noting that negligent or innocent mistakes by an affiant do not support a Fourth Amendment challenge). Materiality is assessed by "excis[ing] the offending inaccuracies," adding any material omissions, and then asking whether the "corrected" affidavit would still establish probable cause. *Reedy v. Evanson*, 615 F.3d 197, 213 (3d Cir. 2010).

As noted, each of the three warrant applications was supported by a detailed Affidavit of Probable Cause. *See* ECF No. 29-1, pp. 2-3, 20-23, 30-33. Defendant Paxton's Affidavit for the search of 117 Washington Avenue (upstairs), for example, stated the material information upon which the application was based as follows:

> 3) On September 9, 2022 officers were called to a residence at 339 Washington Ave for a dispute between 2 males. The dispute was between Anthony Happel and Shane Stahlman. Yvonne Greene, of the Oil City code office, stated that the two males were about to fight when she arrived at the scene. Yvonne stated that Anthony was making threats toward Shane.
>
> 4) Yvonne told Anthony that he should leave and she was calling the police. When officers arrived Anthony was no

longer at the scene. Yvonne stated that Anthony left right after she had called the department.

5) Officers spoke with Trey Rice a neighbor to Shane who stated that he saw the black handle of a gun in the firearm in Anthony's waist. Anthony then fixed his shirt to cover the firearm. Trey also informed officers that roughly a week prior Anthony had been at 339 Washington and showed him a 9mm pistol and a .380 acp pistol. Anthony stated that the serial numbers were filed off but Trey was not able to see to confirm.

6) Officers spoke with Shane who was still on scene. Shane stated he did not see a firearm on Anthony. She however was able to say that Anthony had multiple firearms in his apartment at 117 Washington Ave. Shane stated that most had the serial number filed off of them.

7) Officers conducted another interview with Shane. Shane stated that he had seen the firearms at the house on August 2, 2022. Shane stated that there was an AK style shotgun, a 45 caliber AR, and at least 2 pistols. Shane also stated that all but the shotgun had the serial number filed off of the firearms. Shane also stated that when Anthony came to the residence earlier he stated to him that he was going to "end him". Shane stated that Anthony did not ever show a firearm while he was at the house.

8) Based off information provided above your affiant did pull a criminal history for Anthony Happel. Based off criminal convictions Anthony would be considered a person not to possess firearms.

9) Your affiant believes that any financial records and other business records will help to further the investigation as to where the firearms came from.

10) While on patrol in the end of August and beginning of September. Your affiant as well as the other officers witnessed Anthony going into a tan colored mobile camper that is on the curtilage of the property. Officers have witnessed Anthony carry items into the camper.

11) Based on the above information, your affiant believes that probable cause exists for the issuance of a search warrant in this investigation, for the aforementioned evidence. Further, if the search warrant is issued, your

> affiant believes there is a very high probability that firearms will be found leading to prosecution.

*Id.*, pp. 2-3.

The two other Affidavits of Probable Cause at issue are similarly detailed. And each plainly supports the magisterial district judge's finding that there existed a fair probability that contraband or evidence of a crime would be found at the property specified in the warrant. Happel has not identified any material misstatements or omissions included in any warrant application or affidavit. Instead, he offers disjointed narratives apparently to explain why he was not guilty of the crimes to which he pled guilty. *See* ECF No. 66-1 (Happel Affidavit). While Happel may dispute the accuracy or the veracity of the information the witnesses provided to the officers during their investigation, no basis exists to support a finding that any officer unreasonably relied on any witness or inaccurately related the results of their investigation in his Affidavit of Probable Cause. Thus, no basis exists to disturb the deference accorded to the magisterial district judge's finding of probable cause as to each warrant. Defendants are entitled to judgment as a matter of law as to this claim.

### 2. Execution of the Warrants

Happel's Fourth Amendment claim based on the reasonableness of the officers' execution of the warrants also fails as a matter of law. Happel claims that the Defendants damaged the 1986 Chevrolet motorhome that was the subject of the warrant application submitted by Defendant Ruditis. *See* ECF No. 66-1, ¶ 36. "Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment." *United States v. Ramirez*, 523 U.S. 65, 71 (1998);

*see also, e.g., Miller v. Reese,* 2026 WL 901085, at *10 (W.D. Pa. Apr. 2, 2026) (finding that issues of fact precluded summary judgment on property owners' Fourth Amendment claim that state police caused unnecessary damage to their home during execution of search warrant). But here, the motorhome at issue was owned by Happel's girlfriend, Audriana McCool, who is not a party to this lawsuit. Standing requires that "a litigant 'assert his or her own legal interests rather than those of third parties.'" *Wheeler v. Travelers Ins. Co.,* 22 F.3d 534, 538 (3d Cir. 1994) (quoting *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 804 (1985)). *See also, Cale v. Keim Lumber Co.,* 2024 WL 493277, at *5 (W.D. Pa. Feb. 8, 2024) (same). Happel has failed to produce evidence that he has any legal ownership of the motorhome at issue. He therefore lacks standing to bring this claim.

G. Happel's selective enforcement equal protection claim fails as a matter of law.

"Selective discriminatory enforcement of a facially valid law is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment." *Jewish Home of E. PA v. Centers for Medicare & Medicaid Servs.,* 693 F.3d 359, 363 (3d Cir. 2012) (citing *Yick Wo v. Hopkins,* 118 U.S. 356, 373 (1886) and *Holder v. City of Allentown,* 987 F.2d 188, 197 (3d Cir.1993)). To establish a selective enforcement claim, Happel must show (1) that he was "treated differently from another, similarly situated" person, and (2) "'that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, ... or to prevent the exercise of a fundamental right.'" *Id.* (quoting *Dique v. N.J. State Police,* 603 F.3d 181, 184 n. 5 (3d Cir.2010) (quotation marks omitted). Therefore, Happel "must

32

provide evidence of discriminatory purpose, not mere unequal treatment or adverse effect." *Id.* (citing *Snowden v. Hughes*, 321 U.S. 1, 8 (1944)).  Happel asserts that he, as a "prohibited person," was investigated and charged for illegal possession of firearms while other similarly situated prohibited possessors of firearms were not. This assertion alone fails to support an equal protection claim.  First, Happel has not identified any specific individual who was similarly situated and not investigated or charged.  Secondly, the record includes no evidence to support a finding that Happel was treated differently based on an impermissible factor, such as race, religion, or some other arbitrary factor, or to prevent the exercise of a fundamental right. Because Happel has failed to demonstrate a genuine issue of material fact as to either element of his selective enforcement claim, summary judgment will be entered in favor of the Defendants on this claim.

V.    Conclusion

For the above reasons, the Defendants' motion for summary judgment (ECF No. 25) will be granted and judgment pursuant to Fed. R. Civ. P. 58 will be entered in their favor on all claims.

A separate Order of Judgment will follow.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES
MAGISTRATE JUDGE